23CA0908 Peo v Aschenbrenner 07-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0908
Adams County District Court No. 21CR3878
Honorable Kyle Seedorf, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jeffrey Robert Aschenbrenner,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHOCK
Welling and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 9, 2026

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Jeffrey Robert Aschenbrenner, appeals his convictions for first degree extreme indifference murder and attempted second degree murder, as well as his sentence of life imprisonment without the possibility of parole (LWOP).  He argues that (1) the district court erred by excluding evidence of one victim's drug possession; (2) the prosecutor committed misconduct during closing argument; (3) the district court erred by not instructing the jury on defense of property; (4) the cumulative effect of these errors requires reversal; and (5) his LWOP sentence is unconstitutionally disproportionate to the crime of first degree extreme indifference murder.  We reject each of Aschenbrenner's contentions and affirm.

## I.     Background

¶ 2     G.M. agreed to help his daughter, M.M., move out of a home where she had been living with Aschenbrenner.  After they had finished packing M.M.'s belongings into a trailer, M.M. told G.M. she also wanted to "move both of [her] vehicles" — a Mercedes that M.M. was "using" but that was titled in Aschenbrenner's name, and an Audi that M.M. had "purchased" but did not yet have title to.  M.M. and G.M. drove the cars to a nearby gas station, left the Mercedes, and drove the Audi back to the home to get the trailer.

1

¶ 3	G.M. testified at trial that when they returned to the trailer a block from the home, Aschenbrenner's SUV was parked nearby. As M.M. stopped, G.M. heard gunshots. Aschenbrenner then opened the door of the Audi, holding a gun, and said, "Get the fuck out of my car." M.M. sped off in the Audi, and the SUV followed her.

¶ 4	While M.M. was driving away, with the SUV in close pursuit, she was shot in the stomach. M.M. pulled over, and G.M. called 911. Another vehicle also stopped. Although G.M. could not see the other vehicle or its driver, he "presumed" it was Aschenbrenner because "he's the only one who would've followed [them] and would be behind [them]." The two men yelled at one another, and G.M. testified at trial that he recognized Aschenbrenner's voice in the background of the 911 call. The other vehicle then drove off.

¶ 5	M.M. died from her injuries. The gun that fired the fatal shots was not found, but there were three bullet holes in the Audi, and a bullet found at the scene of the first gunshots (near the trailer) was fired from the same gun as the bullet that struck and killed M.M.

¶ 6	Aschenbrenner was charged with two counts of first degree murder for the death of M.M. — one for after deliberation and one for extreme indifference — and one count of attempted first degree

2

extreme indifference murder for G.M.[1]  At trial, Aschenbrenner's primary defense was that the prosecution failed to prove beyond a reasonable doubt that he was the shooter.  Defense counsel also argued that the location of the bullet holes in the Audi — none more than two feet high — was inconsistent with an intent to kill.

¶ 7     The jury did not find Aschenbrenner guilty of first degree murder after deliberation, convicting him instead of the lesser included offense of second degree murder.  But the jury convicted him of first degree extreme indifference murder.  It also convicted him of attempted second degree murder as a lesser included offense of attempted first degree extreme indifference murder.

¶ 8     The district court merged the two murder convictions and sentenced Aschenbrenner to mandatory LWOP for the first degree extreme indifference murder count, with a concurrent sentence for the attempted second degree murder count.

---

[1] The prosecution charged these counts as crimes of domestic violence under sections 18-6-800.3(1) and 18-6-801, C.R.S. 2025. Aschenbrenner was also charged with possession of a weapon by a previous offender and a crime of violence sentence enhancer.

## II.      Exclusion of Evidence of M.M.'s Methamphetamine Possession

¶ 9      Aschenbrenner first argues that the district court erred by excluding evidence that M.M. possessed a nonuser quantity of suspected methamphetamine at the time of the shooting.  He contends that the evidence should have been admitted to challenge the adequacy of the police investigation.  We are not persuaded.

### A.      Additional Background

¶ 10      When M.M. was shot, she was carrying a bag of suspected methamphetamine.  The prosecution moved pretrial to exclude evidence of the methamphetamine, arguing that it was irrelevant and would be unfairly prejudicial and confusing under CRE 403.

¶ 11      Aschenbrenner objected.  He argued that the quantity of suspected methamphetamine that M.M. possessed (24.51 grams) was consistent with distribution and "could have been investigated as a reason for her homicide."  He therefore asserted that the evidence was relevant to show (1) an alternative theory as to who killed M.M. and (2) the inadequacy of the police investigation.

¶ 12      At a hearing on the motion, the prosecution argued that the probative value of the evidence was low and its prejudicial effect was high.  More specifically, the prosecution argued that (1) it was

"purely speculative" to suggest that the drugs played any role in M.M.'s death, and (2) any such suggestion would open the door to evidence that Aschenbrenner was a known drug dealer. The prosecution also reiterated that any insinuation that M.M. was a drug dealer would be unduly prejudicial and confusing to the jury.

¶ 13     The district court excluded the evidence. It reasoned that Aschenbrenner did not make "a sufficient causal link" to support his apparent theory that "somebody may have been chasing them down to kill them . . . simply based on a presence of drugs." It noted there was no evidence of any alternate suspect nor anything to suggest that the "mere presence of drugs" should have caused the police to investigate other suspects. The court also concluded that the prejudicial impact of the evidence would outweigh any minimal probative value because it risked the jury "devaluing [M.M.'s] life" and "not tak[ing] [the charges] seriously . . . based on a view or impression" that M.M. was a drug addict or a drug dealer.

B.     Standard of Review and Applicable Law

¶ 14     The district court exercises broad discretion in determining the admissibility of evidence based on its relevance, probative value, and prejudicial impact. *People v. Elmarr*, 2015 CO 53, ¶ 20. We

review evidentiary rulings for an abuse of discretion, which means we will reverse only if the ruling is "manifestly arbitrary, unreasonable, unfair, or based on an incorrect understanding of the law." *People v. Owens*, 2024 CO 10, ¶ 105. We review de novo whether the defendant was denied the constitutional right to present a defense. *Rios-Vargas v. People*, 2023 CO 35, ¶ 19.

¶ 15     Evidence must be relevant to be admissible. CRE 402. That means the evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Even if relevant, evidence may be excluded if "its probative value is substantially outweighed by," among other things, "unfair prejudice, confusion of the issues, or misleading the jury." CRE 403. The constitutional right to present a defense is "subject to, and constrained by," these limitations. *Elmarr*, ¶ 27.

¶ 16     Alternate suspect evidence — "evidence indicating that someone else committed the crime" — may be relevant to the material element of the defendant's identity. *Id.* at ¶ 29. But to be admissible, such evidence must "establish a non-speculative connection or nexus between the alternate suspect and the crime

6

charged." *Id.* at ¶ 34. It is not enough to show merely that someone else had a motive or opportunity to commit the crime. *Id.*

## C.    Analysis

¶ 17    The People frame the evidence of M.M.'s drug possession as alternate suspect evidence. And it is true that Aschenbrenner's theory of relevance depends on the premise that "someone else committed the crime" — albeit someone police failed to identify due to their faulty investigation. *Id.* at ¶ 29. *But see Commonwealth v. Moore,* 109 N.E.3d 484, 496 (Mass. 2018) (noting that alternate suspect and inadequate investigation defenses are analytically distinct). As alternate suspect evidence, the evidence would be inadmissible because Aschenbrenner did not identify an alternate suspect — much less one with "additional evidence circumstantially or inferentially linking [them] to the charged crime." *Elmarr,* ¶ 34; *see also People v. Mulligan,* 568 P.2d 449, 457 (Colo. 1977) (holding that alternate suspect evidence was properly excluded where the defendant "failed to identify any other person or show that such person committed any act linking him with the crimes charged").

¶ 18    But assuming Aschenbrenner's challenge to the adequacy of the investigation takes the evidence out of the alternate suspect

7

rubric, the district court did not abuse its discretion by concluding that M.M.'s drug possession was not relevant. Other than the mere presence of the methamphetamine, there was nothing else to suggest that the shooting had anything to do with drugs. To the contrary, the shooting happened near Aschenbrenner's home shortly after M.M. had been with him, and G.M. told the police the night of the shooting that Aschenbrenner had been chasing them when M.M. was shot. Given this evidence, the district court could reasonably conclude that any inference that the drugs alone should have prompted an investigation into someone other than Aschenbrenner — and into some theory other than the one recounted by the eyewitness — was too speculative to be relevant.

¶ 19    Moreover, even if the evidence was minimally probative, the district court did not abuse its discretion by concluding that any probative value was substantially outweighed by the danger of unfair prejudice.[2]  *See* CRE 403.  As noted above, the probative

---

[2] Aschenbrenner asserts that the district court misapplied CRE 403 by saying the prejudicial impact of the evidence "outweigh[ed]" — rather than *substantially* outweighed — its probative value. But despite its omission of "substantially" in paraphrasing the rule, we see no indication that the court applied the wrong standard.

value of the evidence depended on the premise that someone else could have committed the crime; otherwise, how could the police be faulted for failing to pursue that possibility? But with no alternate suspect identified, the jury would have been left with little more than the suggestion that M.M. was a drug dealer who may have created an enemy along the way. Not only could such evidence have unfairly "tainted" M.M., *People v. Toro-Ospina,* 2023 COA 45, ¶ 53, but given the prosecution's proffer that Aschenbrenner was himself a drug dealer, it could have led to a minitrial on drug dealing in a case with no apparent connection to drug dealing.

¶ 20   Thus, we conclude that the district court did not abuse its discretion by excluding evidence of M.M.'s methamphetamine possession under CRE 402 and 403. And because the evidence was properly excluded under those rules, its exclusion did not violate Aschenbrenner's right to present a defense. *See Elmarr,* ¶ 27.

### III.   Prosecutorial Misconduct

¶ 21   Aschenbrenner next contends that the prosecutor committed reversible misconduct during closing argument by (1) shifting the burden of proof; (2) commenting on Aschenbrenner's failure to

testify; and (3) misstating the applicable mens rea for attempted first degree extreme indifference murder. We disagree.

### A. Additional Background

¶ 22 The prosecutor began his closing argument by asserting that M.M. "is dead . . . because of [Aschenbrenner]." He continued:

> You know what [Aschenbrenner] did in the early morning hours of November 27th of 2021. And now in the face of all this evidence, this defendant, through his lawyers and in his theory of the case, comes before you and says, "It must be somebody else. It wasn't me."

¶ 23 Later in the argument, the prosecutor reviewed the reasonable doubt instruction and noted that reasonable doubt may arise from "a fair and rational consideration of all of the evidence or lack of evidence in the case." After repeating the phrase "[l]ack of evidence in the case," he stated, "Lack of any evidence that somebody other than this defendant came down —." At this point, defense counsel objected on the ground that "referring to the lack of evidence that any other person committed this is burden shifting." The district court overruled the objection but instructed the jury, "I will remind you that the burden of proof, as defined in the instructions you've received . . . rests with the People to prove the elements of the case."

¶ 24　Near the end of closing argument, the prosecutor returned to the defense theory that someone else committed the shooting:

> There's no question that [M.M.] was chased down and killed.  This isn't an unknown shooting.  This is a deliberate shooting.  And a shooting with universal malice.
>
> And, again, the only question is who did it?  There is no evidence that anybody else other than [Aschenbrenner] was upset with [M.M.] about the cars.  The theory is that [Aschenbrenner] is upset with [M.M.] about the cars.  Some other dude jumps in his car and follows her and shoots her?  That makes no sense.  There is no evidence before you that anybody other than [Aschenbrenner] committed these crimes.

¶ 25　Finally, during rebuttal, the prosecutor summarized G.M.'s testimony and then argued as follows:

> All of that is consistent.  And all of that when considered with the rest of the evidence shows what happened, that [Aschenbrenner] killed [M.M.].  And by recklessly and with universal malice and extreme indifference to the value of human life that he attempted to kill [G.M.].

### B.　Applicable Law and Standard of Review

¶ 26　We apply a two-step analysis to claims of prosecutorial misconduct.  *Wend v. People,* 235 P.3d 1089, 1096 (Colo. 2010).  We first determine "whether the prosecutor's questionable conduct

was improper based on the totality of the circumstances." *Id.*  If it was, we then consider whether that conduct warrants reversal.  *Id.*

¶ 27    We review a district court's ruling on a preserved prosecutorial misconduct objection for an abuse of discretion and apply harmless error.  *People v. Monroe*, 2020 CO 67, ¶¶ 16-17.  We review unpreserved claims of prosecutorial misconduct for plain error.  *Liggett v. People*, 135 P.3d 725, 735 (Colo. 2006).  Prosecutorial misconduct does not constitute plain error unless it is "flagrantly, glaringly, or tremendously improper" and "so undermine[s] the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction."  *Id.* (citation omitted).

### C.    Burden Shifting

¶ 28    Aschenbrenner first argues that by highlighting the "lack of any evidence" that anyone other than Aschenbrenner committed the crimes, the prosecutor improperly shifted the burden of proof to the defense.  We will assume that defense counsel's objection to the prosecutor's first reference to the lack of evidence preserved an objection to the later such reference.  Even so, we discern no error.

¶ 29    A prosecutor may not make comments that shift the burden of proof to the defendant.  *People v. Santana*, 255 P.3d 1126, 1130

12

(Colo. 2011).  In determining whether a prosecutor's comment impermissibly shifted the burden of proof, we must consider the strength of the comment "in light of the entire record to assess whether the burden was actually shifted."  *Id.* at 1131.  In doing so, we consider the degree to which (1) the prosecutor specifically argued or intended to establish that the defendant carried the burden of proof; (2) the prosecutor's comments were a fair response to defense counsel's argument; and (3) the jury was informed by counsel and the court about the presumption of innocence and the prosecution's burden of proof.  *Id.* at 1131-32.  A prosecutor's comments on the lack of evidence to support a theory of defense do not shift the burden of proof.  *People v. Walker*, 2022 COA 15, ¶ 41.

¶ 30    Applying the *Santana* factors, we conclude that the prosecutor's comments did not impermissibly shift the burden of proof.  First, the prosecutor did not argue, or even suggest, that Aschenbrenner "need[ed] to prove his innocence."  *Santana*, 255 P.3d at 1131.  Nor did he argue that Aschenbrenner had to present any evidence.  To the contrary, the first "lack of evidence" comment came in the context of addressing the reasonable doubt instruction and the *prosecution's* burden of proof.  The prosecutor went on to

13

argue that the prosecution had met *its* burden of proving that Aschenbrenner had been the shooter, in part by dispelling any inference that it could have been someone else. *See id.* at 1135 (holding that prosecutor did not shift burden of proof by making comments "meant to highlight the strength of the prosecution's case, dispelling negative implications raised by defense counsel").

¶ 31    Second, the prosecutor's reference to the lack of evidence that anyone *other* than Aschenbrenner was the shooter was a fair response to the defense theory of the case. *See id.* at 1131. The jury was instructed that Aschenbrenner's theory of defense was that he was not the shooter, and the defense pursued that theory throughout trial. The prosecutor did not argue that Aschenbrenner had to *prove* someone else was the shooter. He "merely highlighted the lack of evidence" to support that theory. *People v. Duncan*, 2023 COA 122, ¶ 38.

¶ 32    Third, the jury was repeatedly informed by the prosecutor and the court (and defense counsel) of the prosecution's burden of proof. *See Santana*, 255 P.3d at 1131-32. Indeed, the prosecutor's first reference to the lack of evidence was sandwiched between such advisements. The prosecutor addressed the burden of proof

immediately before the comment.  Then, after defense counsel's objection, the court reminded the jury of the burden of proof.  And then, when the prosecutor picked back up, he again reiterated that the *prosecution* had to prove the case beyond a reasonable doubt.

¶ 33    Thus, viewed in light of the entire record, the prosecutor's comment on the lack of evidence to support the defense theory that someone else was the shooter did not shift the burden of proof.

### D.    Comment on Failure to Testify

¶ 34    Aschenbrenner next argues that the prosecutor improperly commented on his failure to testify when he said, "[T]his defendant, through his lawyers and in his theory of the case, comes before you and says, 'It must be somebody else.  It wasn't me.'"  We disagree.

¶ 35    A prosecutor may not comment on a defendant's decision not to testify.  *People v. Trujillo*, 2018 COA 12, ¶ 38.  Such a comment requires reversal when the prosecution used the defendant's silence to "creat[e] an inference of guilt."  *Id.* at ¶ 43 (citation omitted).

¶ 36    That is not what happened here.  The prosecutor did not mention Aschenbrenner's failure to testify or comment on what Aschenbrenner did *not* say.  Instead, he commented on what Aschenbrenner *did* say — albeit "through his lawyers."  Although

15

Aschenbrenner contends that the reference to speaking "through his lawyers" implicitly directed the jury's attention to his failure to testify, we do not view that, in context, as either the intended or likely effect of the remark. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.").

¶ 37    Moreover, even if the remark could have been understood in that manner, the prosecution did not make it "as a means of implying guilt" from Aschenbrenner's silence. *People v. Gibson*, 203 P.3d 571, 577 (Colo. App. 2008). Rather, the clear intent and gist of the statement was to address the theory of defense. *See id.*

### E.    Misstatement of the Law

¶ 38    Finally, Aschenbrenner argues that the prosecutor misstated the law by asserting that Aschenbrenner "recklessly" — rather than knowingly — "and with universal malice and extreme indifference to the value of human life . . . attempted to kill [G.M.]." Because Aschenbrenner did not object to this statement in the district court, we review it for plain error. *See Liggett*, 135 P.3d at 735.

16

¶ 39    To the extent the prosecutor's statement implied that the mens rea for first degree extreme indifference murder was "recklessly," it was incorrect.[3]  A person commits first degree extreme indifference murder if, "[u]nder circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally, he *knowingly* engages in conduct which creates a grave risk of death to a person, or persons, other than himself, and thereby causes the death of another."  § 18-3-102(1)(d), C.R.S. 2025 (emphasis added).  The required mental state for extreme indifference murder — which applies to both the nature and the result of the defendant's conduct — is therefore "knowingly," not recklessly.  *See Montoya v. People*, 2017 CO 40, ¶ 11.  And attempted extreme indifference murder requires the jury to find that the defendant "knowingly engaged in conduct strongly corroborative of his purpose" to commit that crime.  *Id.* at ¶ 16.

¶ 40    But the prosecutor's misstatement of the applicable mens rea for attempted first degree extreme indifference murder was not plain error because Aschenbrenner was not convicted of that offense.  *Cf.*

---

[3] The prosecutor did not expressly identify the elements of the offense.  He just said that Aschenbrenner acted recklessly.

*Moore v. People*, 925 P.2d 264, 267 (Colo. 1996) (holding that challenge to jury instruction on extreme indifference murder charge was moot because the defendant was acquitted of that charge). The prosecutor's misstatement of the mens rea for attempted first degree extreme indifference murder did not undermine or cast doubt on Aschenbrenner's conviction for the lesser offense of attempted second degree murder. *See Liggett*, 135 P.3d at 735.

¶ 41 Nor did the statement "cast serious doubt on the reliability" of Aschenbrenner's conviction for first degree extreme indifference murder of M.M. *Id.* (citation omitted). The prosecutor used the word "recklessly" only when referring to Aschenbrenner's attempt to kill G.M. The prosecutor made no statement about the mens rea for the charged murder of M.M. The jury was correctly instructed on the elements of that offense — separately from the attempt charge — and we presume the jury followed that instruction. *See People v. Dominguez-Castor*, 2020 COA 1, ¶ 91; *see also Moore*, 925 P.2d at 267 (rejecting argument that an error related to a count for which the defendant was acquitted "may have adversely affected the jury's consideration of the offense for which he was found guilty").

## IV.    Defense of Property Instruction

¶ 42    At trial, defense counsel requested an instruction on defense of property under section 18-1-706, C.R.S. 2025, arguing that there was some evidence that Aschenbrenner used physical force to prevent the theft of his vehicles.  Relying on *People v. Oslund*, 2012 COA 62, the district court rejected the tendered instruction on the ground that any theft had been completed before the confrontation. Aschenbrenner argues that this was error.  We again disagree.

### A.    Applicable Law and Standard of Review

¶ 43    When the evidence raises the issue of an affirmative defense, the affirmative defense becomes an additional element of the charged offense that must be disproved beyond a reasonable doubt. *Galvan v. People*, 2020 CO 82, ¶ 21.  A defendant is entitled to a jury instruction on an affirmative defense if there is "some credible evidence" to support it.  *Pearson v. People*, 2022 CO 4, ¶ 16 (quoting § 18-1-407(1), C.R.S. 2025).  We review de novo whether the defendant met this burden, viewing the evidence in the light most favorable to the defendant.  *People v. Newell*, 2017 COA 27, ¶ 19.

¶ 44    Section 18-1-706 sets forth the affirmative defense of the use of physical force in defense of property:

> A person is justified in using reasonable and appropriate physical force upon another person when and to the extent that he reasonably believes it necessary to prevent what he reasonably believes to be an attempt by the other person to commit theft, criminal mischief, or criminal tampering involving property, but he may use deadly physical force under these circumstances only in defense of himself or another as described in section 18-1-704[, C.R.S. 2025].

¶ 45   The defense is available only to *prevent* an attempted theft. *See Oslund*, ¶ 25; *People v. Goedecke*, 730 P.2d 900, 901 (Colo. App. 1986). It does not justify the use of physical force to recover stolen property after it has been taken. *See Oslund*, ¶¶ 24-25.

## B.   Analysis

¶ 46   We agree with the district court that there was no credible evidence to support a defense of property instruction.

¶ 47   As an initial matter, we note that such a defense — which explicitly presumes the use of force — would have directly conflicted with Aschenbrenner's theory of defense that he was not the shooter. *See Pearson*, ¶ 18 ("In asserting an affirmative defense, a defendant admits to the conduct that gives rise to the charged offense."); *People v. Snider*, 2021 COA 19, ¶ 16 ("[A] defendant is not entitled to a[] [self-defense] affirmative defense instruction if he denies

20

committing the charged crime."). It is also inconsistent with the extreme indifference and universal malice elements of first degree extreme indifference murder. *See People v. Pickering*, 276 P.3d 553, 556 (Colo. 2011) (explaining that self-defense is not an affirmative defense to crimes requiring extreme indifference because "acts committed . . . with extreme indifference . . . are 'totally inconsistent' with self-defense" (citation omitted)).

¶ 48     But even setting aside these inconsistencies, there was no credible evidence that Aschenbrenner shot M.M., and attempted to shoot G.M., to prevent an attempted theft. The only car for which there was any evidence of Aschenbrenner's ownership was the Mercedes, which was titled in Aschenbrenner's name. And M.M. and G.M. had moved that car to a gas station a several-minute drive from Aschenbrenner's home before their confrontation with Aschenbrenner. Thus, as in *Oslund,* any alleged theft of the Mercedes had been completed before the shooting. *See Oslund,* ¶ 24; *Martinez v. People,* 2024 CO 6M, ¶ 40 ("A theft is completed when a thief 'exercise[s] control of the property' and 'move[s] it away from an area within [the] defendant's control.'" (citation omitted)).

¶ 49    Other than Aschenbrenner's demand to "[g]et the fuck out of my car," there was no evidence that he owned the Audi — and thus, no evidence that M.M. and G.M. were attempting to steal it. *See* § 18-4-401(1), C.R.S. 2025 ("A person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value *of another . . . .*" (emphasis added)). To the contrary, G.M. testified that M.M. had purchased the Audi "from her best friend's landlord." The only questions about title concerned the seller's pending receipt of proper title to the car from her deceased brother.

¶ 50    Moreover, even if there was evidence from which a jury could reasonably infer that Aschenbrenner owned the Audi, M.M. and G.M. also exercised control over that car and moved it away from Aschenbrenner's property, along with the Mercedes, before the confrontation. *See Oslund,* ¶ 24. Unlike in *Martinez,* Aschenbrenner did not catch them in the act of attempting to "steal" the Audi and immediately pursue them.[4] *See Martinez,* ¶ 40.

---

[4] In *Martinez v. People,* 2024 CO 6M, the issue was whether the theft victim's actions were foreseeable, not whether the use of force was legally justified. *Martinez,* ¶¶ 33, 40 n.3. The court concluded that it was irrelevant to that question whether the conduct was "within the bounds of the defense-of-property statute." *Id.* at ¶ 39.

If they were stealing the car, they had gotten away. Aschenbrenner found and began pursuing them (and shot at them) only when they returned to their trailer — a block away from his property. *Cf. Oslund*, ¶ 24 (affirming denial of instruction where the defendant "set out in fresh pursuit to find and catch" the thief). By that time, Aschenbrenner could not have been acting to "*prevent*" an attempted theft because any alleged "theft" had already occurred. *Id.* at ¶ 25. At best, he was attempting to "recover" the car. *Id.*

¶ 51    Aschenbrenner urges us not to follow *Oslund* to the extent it "suggests that a person is not justified in using force to prevent an attempted theft where that theft is ongoing and in process during the time the force is used." But that is not what *Oslund* holds. It holds that a person is not justified in using force *after* the theft has been completed. *See id.* at ¶ 24. And that conclusion is dictated by the language of section 18-1-706, which limits the use of physical force to "*prevent* what [the person] reasonably believes to be an *attempt* by the other person to commit theft." (Emphasis added.)

¶ 52    We are not persuaded by Aschenbrenner's contention that this rule means the defense will never apply because "once an attempted theft begins, it has also been completed." That also is not what

*Oslund* (or the statute) says. Until the would-be thief "exercise[s] control of the property" and "move[s] it away from an area within [the] defendant's control," the theft is ongoing, and the defendant may use reasonable and appropriate physical force to prevent it. *Oslund*, ¶ 24. But even viewing the evidence in the light most favorable to Aschenbrenner, there is no evidence that is what happened here. Rather, it was only *after* M.M. and G.M. had taken the vehicles and then returned to get the trailer that Aschenbrenner pursued them and used physical force. "[E]ven rightful owners should not be permitted to . . . use force to regain their property, once it has been taken." *Id.* at ¶ 23 (citation omitted).

¶ 53 We therefore conclude that the district court did not err by declining to give a defense of property jury instruction.

## V. Cumulative Error

¶ 54 Aschenbrenner asserts that even if no single error requires reversal of his convictions, the cumulative effect of the claimed errors deprived him of a fair trial. *See Howard-Walker v. People*, 2019 CO 69, ¶ 24. But because we have identified only one (nonplain) error — the prosecutor's misstatement of the mens rea

24

for attempted extreme indifference murder — the cumulative error doctrine does not apply. *See People v. Daley*, 2021 COA 85, ¶ 142.

## VI.   LWOP Sentence

¶ 55    Aschenbrenner's final contention is that his LWOP sentence — the statutorily mandated sentence for first degree murder — is grossly disproportionate to his offense. Applying the framework dictated by *Wells-Yates v. People*, 2019 CO 90M, we disagree.

### A.   Applicable Law and Standard of Review

¶ 56    When a defendant challenges the proportionality of a sentence, the court must first conduct an abbreviated proportionality review, comparing the gravity or seriousness of the offense with the harshness of the penalty to determine whether the sentence gives rise to an inference of gross disproportionality. *Id.* at ¶¶ 7, 8. 11.

¶ 57    Ordinarily, assessing the gravity or seriousness of an offense requires a fact-based inquiry into the "harm caused or threatened to the victim or society" and "the culpability of the offender." *Id.* at ¶ 12 (quoting *Solem v. Helm*, 463 U.S. 277, 292 (1983)). But when an offense is per se grave or serious — meaning it is "grave or serious in every potential factual scenario" — the court skips the

first step of the analysis (gravity or seriousness) and proceeds directly to the harshness of the penalty. *Id.* at ¶¶ 13, 62, 63.

¶ 58 We review de novo whether a sentence raises an inference of gross disproportionality. *Id.* at ¶ 35.

## B. Analysis

¶ 59 We agree with Aschenbrenner that the district court failed to conduct the required abbreviated proportionality review. Rather than considering the gravity or seriousness of the offense and the harshness of the penalty, the court simply concluded that its "hands [were] tied" because the statute required a LWOP sentence. But even a mandatory sentence may be grossly disproportionate. *See id.* at ¶ 38 (requiring abbreviated proportionality review of mandatory habitual criminal sentence). The district court therefore should have conducted an abbreviated proportionality review.

¶ 60 Nevertheless, when there is no "need for a refined analysis inquiring into the details of the specific offenses . . . , an appellate court is as well positioned as a [district] court to conduct a proportionality review" and may do so in the first instance on appeal. *People v. Castillo*, 2022 COA 20, ¶ 38 (citation omitted). We opt to do so here.

¶ 61    As Aschenbrenner concedes, first degree extreme indifference murder is a per se grave and serious offense. *See id.* at ¶ 42. We therefore do not consider the specific facts and circumstances of Aschenbrenner's offense. *See Wells-Yates*, ¶ 62. Instead, we consider only the harshness of the penalty, affording "great deference" to the legislature's determination. *Id.*; *see* § 18-1.3-401(1)(a)(V.5)(a), C.R.S. 2025 (providing for a minimum sentence of LWOP for a class 1 felony). And although LWOP is the harshest sentence permitted by law, first degree murder is perhaps the most serious offense. *See People v. Smith*, 848 P.2d 365, 374 (Colo. 1993) (noting that first degree murder is "a crime of the utmost gravity"). Given the gravity of that crime, we conclude, consistent with *Castillo*, that Aschenbrenner's LWOP sentence does not give rise to an inference of gross disproportionality.[5] *See Castillo*, ¶ 44.

---

[5] Aschenbrenner asserts that Colorado is unique in classifying extreme indifference murder as first degree murder. But to the extent other states' treatment of extreme indifference murder might be relevant to "evolving standards of decency," *Wells-Yates v. People*, 2019 CO 90M, ¶ 52, the question would not be how the offense is classified, but what punishment is authorized for the offense. Notably, the Colorado legislature has not changed the classification or the mandatory sentence for the offense.

¶ 62 Aschenbrenner challenges the practice of designating offenses as per se grave or serious, arguing that it effectively allows the most severe sentences to "escape proportionality review."  And if a recent concurrence from the supreme court is any indication, he may have a receptive audience for his argument in that court.  *See People v. Kennedy*, 2025 CO 63, ¶ 49 (Samour, J., specially concurring) ("[T]here are compelling reasons . . . to rid our jurisprudence of the 'per se grave or serious' designation . . . .").  We tend to agree that just because an offense is "grave or serious in every potential factual scenario" does not dispel the notion that some versions of that offense may be more serious than others.  *Wells-Yates*, ¶ 63; *see People v. Wells-Yates*, 2023 COA 120, ¶ 36 (noting that "the gravity or seriousness inquiry is not binary").  Indeed, Aschenbrenner's concerns are particularly well taken in a case like this one, where only one sentence is available for the offense and it has been upheld.  But regardless of the potential validity of any challenges to the *Wells-Yates* analysis, we remain bound by that analysis.  *See People v. Melendez*, 2024 COA 21M, ¶ 19.

## VII.  Disposition

¶ 63 The judgment is affirmed.

JUDGE WELLING and JUDGE LUM concur.